IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PATRICK L. JACKSON, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>ABENDROTH & RUSSELL, P.C.,<br><br>    Defendant. | No. 4:16-cv-00113-RGE-HCA<br><br>**ORDER RE:<br>DEFENDANT ABENDROTH &<br>RUSSELL'S MOTION TO DISMISS FOR<br>LACK OF JURISDICTION** |

## I.   INTRODUCTION

Now before the Court is Defendant Abendroth & Russell, P.C.'s Motion to Dismiss for Lack of Jurisdiction. ECF No. 9. The motion is resisted by Plaintiff Patrick L. Jackson, on behalf of himself and others similarly situated. Pl.'s Br. Opp'n Def.'s Mot. Dismiss Lack Jurisdiction, ECF No. 10. The matter came before the Court for hearing on August 12, 2016. Hr'g Def.'s Mot. Dismiss Lack Jurisdiction Mins., ECF No. 16. Attorney Jason W. Miller represented Abendroth & Russell. Attorneys J.D. Haas and Jesse S. Johnson represented Jackson. *Id.* Both parties argued in support of their respective positions. The issue before the Court is whether Jackson has standing under Article III to bring claims against Abendroth & Russell under the Fair Debt Collection Practices Act. For the reasons set forth below, the Court concludes Jackson's allegations are insufficient to confer Article III standing on Jackson, and thus this Court lacks subject-matter jurisdiction.

## II.   BACKGROUND FACTS AND PROCEDURE

Jackson, a private citizen of Iowa, brings this action on behalf of himself and others similarly situated against Abendroth & Russell, P.C. (A&R), a corporation headquartered in Des Moines,

1

under the Fair Debt Collection Practices Act (FDCPA). Jackson alleges certain debt collection letters sent by A&R to him and other consumers residing in Iowa violated the FDCPA. *See* 15 U.S.C. § 1692 (2012 & Supp.2015).

At some time prior to this action, Capital One Bank hired A&R to recover a monetary debt owed by Jackson. Compl. ¶ 15, ECF No. 1. In early 2016, Jackson received a letter from A&R. *Id.* ¶ 20. The two-page letter, dated January 19, 2016, was the first communication between Jackson and A&R. *Id.* ¶ 21. It both informs Jackson of his debt and demands payment. *See* Compl. Ex. A, ECF No. 1-1. The letter states that "[A&R] represents CAPITAL ONE BANK (USA), N.A. concerning the above matter" and lists the bank's Virginia address, an account number, and the "Total Amount Due" at the top of the first page. *Id.* at 2. The rest of the letter states, in pertinent part:

### FEDERAL FAIR DEBT COLLECTION PRACTICES ACT NOTIFICATION

Unless the consumer, within 30 days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector. If the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer (if applicable) and a copy of such verification or judgment will be mailed to the consumer by the debt collector. Upon the consumer's request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

### IOWA NOTICE OF RIGHT TO CURE DEFAULT

You are now in default on this credit transaction. You have a right to correct this default until **February 19, 2016**. If you do so, you may continue with the contract as though you did not default. Your default consists of failure to pay on the above account where credit was extended. Correction of the default: To correct the default you must pay **$15,758.62** on or before **February 19, 2016**. If you do not correct your default by the date stated above, your creditor may exercise its rights against you under the law. If you default again in the next year, your creditor may exercise its rights without sending you another notice like this one.

*Id.*

Jackson contends the letter violated the FDCPA because it did not contain two separate informational disclosures mandated by 15 U.S.C. § 1692g. ECF No. 1 ¶ 7. In Count I, Jackson argues the letter violates 15 U.S.C. § 1692g(b) by demanding payment of his debt before the closure of the thirty-day statutorily-mandated validation window. *Id.* ¶¶ 43–48. Section 1692g of the FDCPA provides consumers the right to validate their debt within thirty days after receiving notice of their FDCPA rights from a debt collector. 15 U.S.C. § 1692g(a)–(b). The letter Jackson received from A&R demands payment by February 19, 2016—approximately thirty days after the date printed on the letter—rather than thirty days after Jackson received the letter. ECF No. 1-1 at 2. Thus, the letter demands payment before the thirty-day validation window expires. According to Jackson, this served to "overshadow[ ] and/or was inconsistent with the disclosure of [his] right to dispute the [d]ebt or to request the name and address of the original creditor." ECF No. 1 ¶ 47. In Count II, Jackson argues the letter violates 15 U.S.C. § 1692g(a)(5) by failing to properly disclose the proper means for verifying the identity of the original creditor of his alleged debt— specifically, that Jackson was supposed to make such a request in writing. *Id.* ¶¶ 49–56. Jackson seeks class certification and an order "[e]njoining [A&R] from future violations of [the FDCPA] with respect to [Jackson] and the class," as well as an award for statutory damages, attorneys' fees and costs, and interest. *Id.* at 11–12.

On June 15, 2016, A&R filed the Motion to Dismiss for Lack of Jurisdiction. A&R argues Jackson's claims under the FDCPA lack Article III standing because the claims fail to properly allege "a concrete injury-in-fact particular to him." ECF No. 9-1 at 14. Relying on the United States Supreme Court decision of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), A&R contends claims based solely on "bare procedural violations" of a federal statute are insufficient to confer standing. ECF No. 9-1 at 1. A&R argues that under *Spokeo*, Jackson's "bare allegation" that A&R

violated the FDCPA and his claim for statutory damages fails to constitute a "concrete harm" sufficient for standing purposes. *Id.* at 9–13.

Jackson maintains that *Spokeo* did nothing to change federal standing requirements and cites two pre-*Spokeo* cases from the Eighth Circuit to support a finding of standing here.[1] ECF No. 10 at 5–10. Jackson argues *Spokeo* merely reinforced the notion that a plaintiff satisfies the Article III injury-in-fact requirement "so long as a claimed injury is both concrete and particularized." *Id.* at 10. He contends the Supreme Court was careful to reaffirm that intangible harms, such as a violation of a statute's procedures alone, can in some circumstances constitute an injury in fact under Article III. *Id.* at 11–13. Jackson asserts the statutory harm he suffered through A&R's violation of the FDCPA constitutes such a cognizable injury. *Id.* at 13–21. A&R counters that violations of the FDCPA do not "automatically" establish an injury in fact or standing. Def.'s Reply Br. Supp. Mot. Dismiss 2–5, ECF No. 12.

## III.   LEGAL STANDARD

A&R asserts Jackson's claims must be dismissed for want of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002) ("[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction."). The party invoking federal jurisdiction bears the burden of establishing standing. *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003). In considering whether a party has standing, the Court "must accept as true all material allegations of the

---

[1]Jackson cites *Hammer v. Sam's East, Inc.*, 754 F.3d 492 (8th Cir. 2014), *cert. denied*, 135 S. Ct. 1175 (2015), and *Charvat v. Mutual First Federal Credit Union*, 725 F.3d 819 (8th Cir. 2013), *cert. denied*, 134 S. Ct. 1515 (2014). The Eighth Circuit has recently recognized, however, that the standing analyses in these decisions do not survive *Spokeo*. *Braitberg v. Charter Commc'ns, Inc.*, No. 14–1737, 2016 WL 4698283, at *4 (8th Cir. Sept. 8, 2016) ("In *Spokeo* . . . the Supreme Court . . . superseded our precedent in *Hammer* and *Charvat*.").

4

complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). The Court does not assess the overall merits of a plaintiff's claim in the standing inquiry. *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012).

A Rule 12(b)(1) motion can be brought by a party as either a "factual attack" or a "facial attack," the determination of which affects the Court's standard of review. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 520–21 (8th Cir. 2007) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). In a facial attack, a party challenges the sufficiency of the pleadings. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Thus, "the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn*, 918 F.2d at 729 n.6 (citations omitted). Under such review, the Court addresses any deficiency in the pleadings and will "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law." *Stalley*, 509 F.3d at 521. In contrast, under a factual attack, the Court will go beyond the pleadings and consider extrinsic evidence in determining whether it has subject matter jurisdiction. *Osborn*, 918 F.2d at 729 n.6. In such an instance, "the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction." *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

Here, A&R characterizes its challenge to Jackson's Article III standing as a facial attack. ECF No. 9-1 at 4. It argues Jackson's complaint is deficient on its face and does not attempt to introduce any evidence from outside of the pleadings. Accordingly, the Court finds A&R's Motion to Dismiss is a facial challenge under Rule 12(b)(1) and will review it as such. *Cf. Aviva Life & Annuity Co. v. Davis*, 20 F. Supp. 3d 694, 698 n.5 (S.D. Iowa 2014) (finding a motion to dismiss

for lack of standing is a factual challenge when "Defendants attached multiple exhibits to their motions to dismiss which contain factual information not included in Plaintiffs' Complaint").

## IV.   DISCUSSION

The standing doctrine serves to ensure the authority of the federal courts extends only to "cases" and "controversies," as mandated by Article III of the United States Constitution. U.S. Const. art. III, § 2; *accord Spokeo*, 136 S. Ct. at 1547. In practice, standing functions as a "threshold question" a litigant invoking federal jurisdiction must satisfy before the court may hear the case. *Warth*, 422 U.S. at 498. "The 'irreducible constitutional minimum of standing' is that a plaintiff show (1) an 'injury-in-fact' that (2) is 'fairly . . . trace[able] to the challenged action of the defendant' and (3) is 'likely . . . [to] be redressed by a favorable decision' in court." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011) (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The burden of these three elements together "ensure[s] that federal courts do not exceed their authority as it has been traditionally understood . . . [and] limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547.

A&R's motion focuses on the first of standing's three elements—injury in fact. This requires a plaintiff show "an invasion of a legally protected interest" that is both "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). The Supreme Court has "emphasized repeatedly" that an injury "must be concrete in both a qualitative and temporal sense." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Such an injury must be "distinct and palpable, as opposed to merely [a]bstract." *Id.* (alteration in original) (citations and internal quotation marks omitted). In other words, "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires

that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972).

In *Spokeo v. Robins*, the Supreme Court discussed the principles of standing and the injury-in-fact requirement. *Spokeo* involved a class-action lawsuit brought under the Fair Credit Reporting Act. 136 S. Ct. at 1546. The Fair Credit Reporting Act imposes various procedural requirements on consumer reporting agencies in order to ensure credit reporting is fair and accurate. *See* 15 U.S.C. § 1681e. Spokeo, Inc. is a web-based company that compiles informational "profiles" of persons from various online databases and provides the profiles to users via its website. *Spokeo*, 136 S. Ct. at 1546. This information can include "the individual's address, phone number, marital status, approximate age, occupation, hobbies, finances, shopping habits, and musical preferences." *Id.* The plaintiff, a private consumer, learned Spokeo had provided incorrect information on the plaintiff to a Spokeo user. *Id.* The plaintiff sued Spokeo for violating the Fair Credit Reporting Act's procedural requirements. *Id.* at 1545–46. The district court found the plaintiff had not alleged an injury in fact and dismissed the complaint for lack of standing. *Id.* at 1546. The Court of Appeals for the Ninth Circuit reversed. *Id.* The Ninth Circuit held the plaintiff's injury "satisf[ied] the injury-in-fact requirement of Article III" because "Spokeo violated [the plaintiff's] statutory rights, not just the statutory rights of other people." *Id.* (quoting 742 F.3d 409, 413–14 (9th Cir. 2014)).

The Supreme Court granted certiorari and reversed the Ninth Circuit. *Id.* at 1550. It found the Ninth Circuit's injury-in-fact analysis focused exclusively on whether the plaintiff's injury was particularized. *Id.* The Court stated it has "made it clear time and time again" that plaintiffs must establish both a particularized *and* concrete injury to show injury in fact. *Id.* at 1548. The Supreme Court held "[b]ecause the Ninth Circuit failed to fully appreciate the distinction between

concreteness and particularization, its standing analysis was incomplete." *Id.* at 1550. The Court did not determine if the plaintiff ultimately had standing under the Fair Credit Reporting Act and instead remanded the case to the Ninth Circuit for further proceedings. *Id.*

The Supreme Court described the analysis for determining whether an alleged injury is concrete. According to the Court, "a concrete injury must be '*de facto*'; that is, it must actually exist." *Id.* at 1548. But concrete does not mean "tangible." *Id.* at 1549. An intangible harm can constitute a concrete injury, such as the loss of free speech rights in *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009), or the loss of the right to practice ones religious beliefs in *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993). *Spokeo*, 136 S. Ct. at 1549. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* History contributes to a finding of concreteness when the intangible injury is closely related to a traditional "basis for a lawsuit in English or American courts." *Id.* And the judgment of Congress is important and instructive, as "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" *Id.* (alteration in original) (quoting *Lujan*, 504 U.S. at 578).

However, the ability of Congress to create cognizable injuries does not mean a plaintiff can "allege a bare procedural violation [of a federal statute], divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* The mere fact that "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right" does not result in automatic standing. *Id.* Plaintiffs must still show a concrete injury when alleging a statutory violation. *Id.* There are some circumstances where the injury-in-fact requirement can be satisfied by a bare procedural violation of a statutory right, as long as that violation is still tied to real and

concrete harm. *See id.* at 1549–50. In such cases, "a plaintiff . . . need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549.

With these principles in mind, the Court must determine whether the alleged FDCPA violations constitute Article III injury in fact. First, the Court will determine whether Jackson suffered a concrete and particularized injury as a result of the alleged statutory violations. Next, the Court will consider whether the alleged violations of FDCPA section 1692g constitute an intangible harm that satisfies the injury-in-fact requirement.

## A.   Concrete Injury Resulting From Alleged FDCPA Violations

Jackson alleges the letter he received from A&R violated various disclosure requirements of the FDCPA. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The statute accomplishes this purpose in part by providing consumers the right to dispute and seek verification of an alleged debt within thirty days after receiving notice of the debt from a debt collector. *Id.* § 1692g(b). Once a consumer exercises these rights, the debt collector must "cease collection of the debt" until verification is provided or the dispute is resolved. *Id.* The FDCPA requires debt collectors inform consumers of these rights via written notification "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt." *Id.* § 1692g(a). Furthermore, "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." *Id.* § 1692g(b); *see also Owens v. Hellmuth & Johnson, PLLC*, 550 F. Supp. 2d 1060, 1064 (D. Minn. 2008) ("[Overshadowing] occurs when

a debt-collection letter conveys information 'in a confusing or contradictory fashion so as to cloud the required message with uncertainty.'" (quoting *DeSantis v. Comput. Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001))).

Jackson contends A&R violated these disclosure requirements in two ways. First, Jackson points to the dates on the collection letter and argues A&R improperly demanded payment of his debt within the thirty-day period the FDCPA provides for a consumer to validate a debt. ECF No. 1 ¶¶ 24–29; 15 U.S.C. § 1692g(b). Jackson argues this "overshadowed and/or was inconsistent with the disclosure of [his] right to dispute the [d]ebt or to request the name and address of the original creditor." ECF No. 1 ¶ 47. Next, Jackson contends A&R failed to properly inform him of his rights under the FDCPA by not stating that a request for the name and address of the original creditor must be made in writing. *Id.* ¶ 49–56; 15 U.S.C. § 1692g(a)(5). Jackson argues "[A&R]'s misstatement of the rights afforded by the FDCPA would cause an unsophisticated consumer to understand, incorrectly, that the requirement to provide the name and address of the consumer's original creditor would be triggered by oral request," and that "[s]uch a misunderstanding could lead an unsophisticated consumer to waive or otherwise not properly vindicate his rights under the FDCPA." ECF No. 1 ¶ 33. Jackson does not allege any injuries beyond these statutory violations. Moreover, at oral argument, Jackson conceded no injury occurred except for the statutory disclosure failures.

A violation of the FDCPA alone, however, does not automatically amount to an injury in fact. *See Spokeo*, 136 S. Ct. at 1549 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."). "[A] bare procedural violation [of a statute], divorced from any concrete harm" cannot

confer Article III standing. *Id.* For example, the *Spokeo* Court stated that even if a consumer reporting agency violated the Fair Credit Reporting Act by "fail[ing] to provide the required notice to a user of the agency's consumer information," no concrete harm would result if that information was in fact accurate. *Id.* at 1550. Similarly, the Court remarked "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* (footnote omitted). In other words, not all failures to give statutorily mandated notice or accurate information "cause harm or present any material risk of harm." *Id.*

Both of Jackson's claims relate to A&R somehow interfering with Jackson's ability to dispute his debt. In Count I, Jackson argues the letter he received from A&R did not properly inform him of "[his] right to dispute the [d]ebt or to request the name and address of the original creditor" because the letter demanded payment before the thirty-day validation window closed. ECF No. 1 ¶ 47. In Count II, Jackson argues the letter failed to inform him that any request to verify the identity of his original creditor had to be in writing. *Id.* ¶ 55.

But Jackson does not indicate he ever intended to dispute his debt in any way. He does not allege the amount of the debt listed at the top of the letter was incorrect. Jackson does not contend the identity of his original creditor is different from the creditor listed in the letter. Jackson does not express any doubt as to the validity of the debt or the identity of the original creditor. In fact, Jackson concedes the creditor identified in the letter is the original creditor. In other words, Jackson does not argue he suffered the concrete harm the disclosure requirements within section 1692g of the FDCPA are designed to prevent. *See* S. Rep. No. 95-382, at 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1699 (stating the "[v]alidation of debts" provision in section 1692g of the FDCPA "will eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid"). This fact pattern mirrors the

Supreme Court's illustration of a statutory violation that would not amount to concrete injury. *See Spokeo*, 136 S. Ct. at 1550 ("A violation of one of the [Fair Credit Reporting Act]'s procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate.").

Jackson argues "when [he] received the deficient letter, the corresponding violation of his statutory rights by [A&R] created the risk of real harm identified by Congress in enacting the FDCPA—that [he] would be confused or misled as to his rights under federal law as the target of a debt collector." ECF No. 10 at 21. Jackson is correct in his understanding "that the risk of real harm [can] satisfy the requirement of concreteness." *Spokeo*, 136 S. Ct. at 1549. But Jackson's alleged statutory violations did not create the risk of real harm because, as indicated above, Jackson did not intend and had no grounds to dispute or challenge the validity of his debt. If a consumer contends the alleged debt owed is incorrect, or merely wishes to verify the debt, then a deficient disclosure of their FDCPA rights could create a risk of real harm because a consumer could inadvertently forfeit their right to validate the debt. *Cf. Riess v. Messerli & Kramer, P.A.*, No. 11–2307, 2011 WL 5506290, at *4 (N.D. Minn. Nov. 10, 2011) (finding a consumer intending to dispute his debt was misled by a letter demanding immediate payment before the thirty-day validation window, which "suggested that [the consumer] was out of time and no longer had the option to dispute his debt"). However, because Jackson never intended to dispute or validate his debt, A&R's alleged failure to disclose Jackson's FDCPA rights in the letter did not carry the risk of real harm. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (stating the Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury

in fact' and that 'allegations of *possible* future injury' are not sufficient" (quoting *Whitmore*, 495 U.S. 149, 158 (1990))).

The Court finds instructive the Eighth Circuit Court of Appeals' decision in *East Iowa Plastics, Inc. v. PI, Inc.*, No. 15-2757, 2016 WL 4245501 (8th Cir. Aug. 11, 2016). *East Iowa Plastics* involved a trademark dispute between two manufacturing companies. *Id.* at *1. Following a series of trademark purchases, the plaintiff and defendant companies began imprinting their manufactured goods with the same mark. *Id.* After using the same mark for ten years, one company sued the other when it tried to register the mark for itself with the United States Patent and Trademark Office. *Id.* at *2. The plaintiff alleged, inter alia, that the defendant had violated the Lanham Act, which "prohibits registering a trademark . . . by means of a false or fraudulent declaration or representation." *Id.* (citing 15 U.S.C. § 1120). At trial, "the district court found that although [the defendant] had violated [the Lanham Act by using fraud to register the mark], [the plaintiff] had not suffered any damages from that violation." *Id.* at *3. Nevertheless, the district court proceeded to cancel the defendant's trademark registrations, pursuant to another provision of the Lanham Act. *Id.* (citing 15 U.S.C. § 1119). On appeal, the Eighth Circuit found the district court did not have jurisdiction to cancel the registrations. *Id.* at *5. The court held that "[o]nce the district court had determined that [the plaintiff] did not suffer any damages from [the defendant]'s violation of [the Act], there was no further basis for [the plaintiff] to have standing to seek cancellation of the . . . registrations." *Id.* at *3. The court found no evidence the plaintiff suffered a non-monetary injury from the defendant's fraudulent trademark registrations. *Id.* at *3–4. Relying in part on *Spokeo*, the Eighth Circuit concluded the plaintiff did not have standing to seek cancellation of its competitor's trademarks because it had not suffered a concrete and particularized injury as a result of the defendant's violation of the Lanham Act. *Id.* at *4 (citing

13

*Spokeo*, 136 S. Ct. at 1549). In other words, the court found the plaintiff did not suffer an Article III injury in fact even though the defendant committed a statutory violation.

The Court is further guided by the Eighth Circuit's recent decision in *Braitberg v. Charter Communications, Inc.*, No. 14–1737, 2016 WL 4698283 (8th Cir. Sept. 8, 2016). In *Braitberg*, a consumer brought an action against a cable services company. *Id.* at *1. The plaintiff, a former customer of the company, learned some of his personal information had been retained after he canceled his service, "including his address, telephone number, and social security number." *Id.* The plaintiff brought suit under the Cable Communications Policy Act, which "provides that '[a] cable operator shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information [by the subscriber] or pursuant to a court order.'" *Id.* (alterations in original) (quoting 47 U.S.C. § 551(e)). The plaintiff alleged the cable company injured him and a proposed class of consumers by "[directly invading] their federally protected privacy rights . . . [and depriving them] . . . of the full value of the services they purchased from [the company]." *Id.* (internal quotation marks omitted). The company moved to dismiss the case for failure to state a claim and lack of Article III standing, which the district court granted. *Id.*

The Eighth Circuit affirmed the district court's judgment. The court noted its prior decisions "seemed to accept" that the plaintiff could establish an injury in fact without the "need for him to allege or show any 'actual injury' arising from [the company]'s retention of his personal information." *Id.* at *4 (citing *Hammer v. Sam's East., Inc.*, 754 F.3d 492, 498–99 (8th Cir. 2014), and *Charvat v. Mut. First Fed. Credit Union*, 725 F.3d 819, 822 (8th Cir. 2013)). The court held, however, that *Spokeo* "rejected this absolute view." *Braitberg*, 2016 WL 4698283, at *4. "With the benefit of *Spokeo*'s guidance," the Eighth Circuit held the plaintiff in *Braitberg* alleged neither

14

real harm nor the risk of harm, noting "[he] does not allege that [the cable company] has disclosed the information to a third party, that any outside party has accessed the data, or that [the company] has used the information in any way during the disputed period." *Id.* The court found the plaintiff's claims under the Cable Communications Policy Act were a "bare procedural violation, divorced from any concrete harm." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549). It concluded the plaintiff had not alleged an injury sufficient for Article III standing. *Id.* at *5.

Like the Eighth Circuit in *East Iowa Plastics* and *Braitberg*, other courts analyzing the injury-in-fact element following *Spokeo* have reached similar conclusions when a plaintiff alleges statutory violations, but lacks an additional injury. *See Hancock v. Urban Outfitters, Inc.*, No. 14-7047, 2016 WL 3996710, at *2–3 (D.C. Cir. July 26, 2016) (holding allegations that defendant violated the D.C. Consumer Identification Information Act and the D.C. Consumer Protection Procedures Act by requesting customers' zip codes in connection with credit card purchases is not a concrete Article III injury because "[the complaint] fails to allege that [plaintiffs] suffered any cognizable injury as a result of the zip code disclosures"); *Fisher v. Enter. Holdings, Inc.*, No. 4:15CV00372, 2016 WL 4665899, at *4 (E.D. Mo. Sept. 7, 2016) (finding allegations that a prospective employer violated the Fair Credit Reporting Act by obtaining a consumer report on the plaintiff without giving proper notice is not a concrete injury because "[a]ll [p]laintiff alleges is that the . . . disclosure . . . did not comply with the statute at issue"); *Groshek v. Time Warner Cable, Inc.*, No. 15-C-157, 2016 WL 4203506, at *2–3 (E.D. Wis. Aug. 9, 2016) (finding allegations that a prospective employer violated the Fair Credit Reporting Act by obtaining a consumer information report on the plaintiff without giving him notice is not by itself a sufficiently concrete injury); *Romero v. Dep't Stores Nat'l Bank*, No. 15-CV-193, 2016 WL 4184099, at *4–6 (S.D. Cal. Aug. 5, 2016) (holding that a debt collector placing a phone call using an automated

15

telephone dialing system is "merely a procedural violation" of the Telephone Consumer Protection Act that does not by itself result in concrete harm); *Gubala v. Time Warner Cable, Inc.*, No. 15-cv-1078, 2016 WL 3390415, at *4–5 (E.D. Wis. June 16, 2016) (holding that a plaintiff does not suffer a concrete injury when his only alleged harm is that a cable company retained his personally identifiable information in violation of the Cable Communications Policy Act); *Smith v. Ohio State Univ.*, No. 2:15-CV-3030, 2016 WL 3182675, at *4 (S.D. Ohio June 8, 2016) (dismissing plaintiffs' claims for violations of the Fair Credit Reporting Act's disclosure requirements because plaintiffs "did not suffer a concrete consequential damage as a result of [the defendant]'s alleged breach of the [Fair Credit Reporting Act]"); *Khan v. Children's Nat'l Health Sys.*, No. TDC-15-2125, 2016 WL 2946165, at *7 (D. Md. May 19, 2016) (finding allegations that defendants violated the Maryland Consumer Protection Act and the D.C. Consumer Protection Procedures Act were bare procedural violations that did not result in standing because the plaintiffs "failed to connect the alleged statutory . . . violations to a concrete harm"). Furthermore, the Southern District of California addressed the FDCPA in two separate cases, finding in both that the respective plaintiffs' alleged statutory violations did not result in concrete injuries. *See Provo v. Rady Children's Hosp.*, No. 15cv00081, 2016 WL 4625556, at *2 (S.D. Cal. Sept. 6, 2016) (finding allegation that debt collector's letter violated the FDCPA is not a concrete injury when "nowhere in the [complaint] do [the plaintiffs] plead any harm or material risk of harm that they suffered as a consequence"); *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-1392, 2016 WL 3919633, at *2 (S.D. Cal. June 16, 2016) (holding alleged FDCPA violations in a letter addressed to the plaintiff do not result in a concrete injury when the plaintiff never actually received the letter prior to litigation). *But see Mahala A. Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (finding statutory violation of FDCPA alone constitutes a

concrete injury sufficient for standing); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at \*3–5 (N.D. Ill. July 11, 2016) (same); *Chapman v. Dowman, Heintz, Boscia & Vician, P.C.*, No. 2:15-CV-120, 2016 WL 3247872, at \*1 n.1 (N.D. Ind. June 13, 2016) (same).

Like the plaintiffs in the above cases, Jackson's only allegations are statutory procedural violations. Although he claims to suffer both real harm and the risk of future harm as a result of these violations, the Court finds such claims here are insufficient to establish concrete injury.[2] The Court will proceed to determine whether the alleged violations of FDCPA section 1692g, without more, constitute intangible harm that satisfies the injury-in-fact requirement.

### B.    FDCPA Violations as an Injury in Fact

The Supreme Court in *Spokeo* recognized a plaintiff's injuries do not necessarily have to be "tangible" in order to be concrete. 136 S. Ct. at 1549. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* "[I]t is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* The judgment of Congress is "also instructive and important" because "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (alteration in original) (quoting *Lujan*, 504 U.S. at 578). Accordingly, some procedural violations of statutes are, on their own, sufficient to constitute an injury in fact. *Id.* at 1549–50. In such circumstances, "a plaintiff . . . need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549.

---

[2]Because the Court finds Jackson's alleged injury is not concrete, it is unnecessary to address whether his injury is particularized.

The *Spokeo* Court cited two cases as examples where a statutory procedural violation alone constitutes a concrete injury—*Federal Election Commission v. Akins*, 524 U.S. 11 (1998), and *Public Citizen v. Department of Justice*, 491 U.S. 440 (1989). *Spokeo*, 136 S. Ct. at 1549–50. At issue in *Akins* was whether an organization had to publicly disclose certain information under the Federal Election Campaign Act. 524 U.S. at 13–14. The Court noted the purpose of the Act is "to remedy any actual or perceived corruption of the political process" by, among other means, "impos[ing] extensive recordkeeping and disclosure requirements upon groups that fall within the Act's definition of a 'political committee.'" *Id.* at 14. The Court found the plaintiff voters' "inability to obtain information [about the organization's donors]" was a concrete and particular injury in fact. *Id.* at 21. In *Public Citizen*, various public interest groups sued the Department of Justice under the Federal Advisory Committee Act for failing to disclose the names of potential federal judicial nominees. 491 U.S. at 447. Addressing a challenge for lack of standing, the Court found "refusal to permit [the plaintiffs] to scrutinize the ABA Committee's activities to the extent [the Federal Advisory Committee Act] allows constitutes a sufficiently distinct injury to provide standing to sue." *Id.* at 449.

Jackson argues the injuries he suffered by being denied information under the FDCPA are analogous to the injuries in *Akins* and *Public Citizen*. ECF No. 10 at 18. He contends the Court in *Spokeo* held that "being denied access to information to which an individual is entitled by statute . . . is, on its own, sufficiently concrete." *Id.* Thus, Jackson argues a violation of the FDCPA's disclosure requirements alone is an intangible harm providing Article III standing. Jackson claims that "just like the invasion of rights to accurate information sufficed to support standing in *Public Citizen* . . . [and] *Akin*[*s*], so too does the invasion of the analogous right here support [his] standing to sue under the FDCPA." ECF No. 10 at 19. Jackson contends "the abusive debt collection

18

practices that Congress sought to curb by requiring debt collectors to accurately inform consumers of their rights under the statute resulted in real, concrete harm here." *Id.* at 20.

However, the procedural violations in *Akins* and *Public Citizen* were each considered an injury in fact because the violations were tied to a concrete harm, not merely because the plaintiffs were denied access to information. *See Spokeo*, 136 S. Ct. at 1449–50. In *Akins*, the failure to obtain information prevented the plaintiffs from "evaluat[ing] candidates for public office . . . [and] the role that [an organization]'s financial assistance might play in a specific election." 524 U.S. at 21. In *Public Citizen*, the failure to obtain information prevented the plaintiffs from "seek[ing] access to the ABA Committee's meetings and records in order to monitor its workings and participate more effectively in the judicial selection process." 491 U.S. at 449. Each injury was in essence the very harm the respective statutes were designed to prevent. *See Akins*, 524 U.S. at 14 ("[T]he [Federal Election Campaign Act] seeks to remedy any actual or perceived corruption of the political process."); *Public Citizen*, 491 U.S. at 446 ("[One] purpose [of the Federal Advisory Committee Act] was to ensure . . . that Congress and the public remain apprised of [new advisory committees'] existence, activities, and cost."). Accordingly, the plaintiffs in *Akins* and *Public Citizen* did not have to "allege any additional harm beyond the one Congress [ ] identified." *Spokeo*, 136 S. Ct. at 1549. Plaintiffs' denial of access to statutorily mandated information is not what made the procedural violations in those cases concrete. *See Spokeo*, 136 S. Ct. at 1550 (stating denial of information mandated by statute "may result in no harm" for standing purposes).

In addition to *Akins* and *Public Citizen*, Jackson points to *Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982). ECF No. 10 at 18. In *Havens Realty*, the plaintiffs brought claims against a landlord under the Fair Housing Act. 455 U.S. at 366–67. The plaintiffs alleged the landlord discriminated against current and prospective tenants based upon their race. *Id.* Two of

the plaintiffs were employees of a Virginia non-profit organization who acted as "tester plaintiffs." *Id.* at 368. The two plaintiffs, one Caucasian and one African-American, contacted the landlord multiple times about vacancies even though they were not actually interested in renting the units. *Id.* The two sued the landlord after receiving conflicting information. *Id.* The district court dismissed the claims of the two test plaintiffs for lack of standing, but the Fourth Circuit reversed. *Id.* at 369–70. On certiorari, the Supreme Court focused on the language of the Fair Housing Act, which "states that it is unlawful for an individual or firm covered by the Act '[t]o represent to *any person* because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.'" *Id.* at 373 (alteration in original) (quoting 42 U.S.C. § 3604(d)). The Court held "Congress has thus conferred on all 'persons' a legal right to truthful information about available housing." *Id.* The Court found the African-American test plaintiff had accordingly suffered an injury in fact. *Id.* at 373–74.

Like *Akins* and *Public Citizen*, the harm suffered by the plaintiff in *Havens Realty* was the harm Congress intended to curb when it passed the particular statutory provision at issue. *See Havens Realty*, 455 U.S. at 375 (finding the African-American plaintiff had standing to sue under the Fair Housing Act because he, unlike the Caucasian plaintiff, "allege[s] that he was a victim of a discriminatory misrepresentation"). Accordingly, the test plaintiff's intangible harm constituted a concrete injury. To determine whether Jackson's alleged FDCPA violations are by themselves sufficiently concrete to confer Article III standing, the Court must examine the provisions at issue and consider both the history of related harms in American and English courts, as well as Congress's judgment. *Spokeo*, 136 S. Ct. at 1549.

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The statute seeks "to protect consumers from a host of unfair,

harassing, and deceptive debt collection practices." S. Rep. No. 95-382, at 1. Congress enacted the FDCPA to be "primarily self-enforcing," noting "consumers who have been subjected to collection abuses will be enforcing compliance." *Id.* at 5. Section 1692k creates civil liability for "any debt collector who fails to comply with any provision of this subchapter with respect to any person." 15 U.S.C. § 1692k. Congress plainly intended to elevate violations of the FDCPA "to the status of legally cognizable injuries." *Lujan*, 504 U.S. at 578. Furthermore, the harms resulting from abusive debt collection practices are closely related to harms that traditionally provided a basis for relief in American and English courts, such as fraud. *See S. Dev. Co. v. Silva*, 125 U.S. 247, 250 (1888) (defining the legal elements of a civil fraud); *Pasley v. Freeman* (1789) 100 Eng. Rep. 450 (K.B.) 450 ("A false affirmation, made by the defendant with intent to defraud the plaintiff, whereby the plaintiff receives damage, is the ground of an action upon the case in the nature of deceit."); Restatement (Second) of Torts § 525 (1977) (discussing fraudulent misrepresentation). Thus, the FDCPA created the substantive right for consumers to be free from debt collector abuse. To accomplish this goal, the statute mandates various procedures meant to decrease the risk of the above-mentioned injuries. On a general level, each of these procedures helps prevent abusive actions by debt collectors. But this does not mean their violation automatically amounts to the injury identified by Congress in the statute. *See Spokeo*, 136 S. Ct. at 1550 ("A violation of one of [a federal statute]'s procedural requirements *may* result in no harm." (emphasis added)).

Jackson alleges A&R violated the FDCPA's "validation of debts" provision. ECF No. 1 ¶¶ 43–56; 15 U.S.C. § 1692g. The provision's purpose is to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4. To prevent this, the provision vests consumers with the right to verify any debt they are alleged to owe, and contains various procedures for ensuring that

right, including disclosure requirements for debt collectors. *See* 15 U.S.C. § 1692g(a), (b). A debt collector must provide a consumer, within five days after the initial communication between the consumer and the debt collector, a written notice containing:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id.* § 1692g(a). In addition, the written notice cannot "overshadow or be inconsistent with [these disclosures]." *Id.* § 1692g(b). These requirements in sections 1692g(a) and (b) are procedural rights designed to decrease the risk of the injury identified by Congress in the FDCPA—abusive debt collection practices in the form of "dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4. Although violating these procedural rights may result in the harm identified by Congress, it does not result in such an injury on its own, unlike the procedural violations at issue in *Akins* and *Public Citizen*.

Furthermore, although the common law system traditionally provided redress for harms closely related to fraudulent or mistaken demands for payment, *see* Restatement (Second) of Torts § 525 (discussing fraudulent misrepresentation), the procedural harm of not receiving informational disclosures from a debt collector is not closely related to any traditional bases for relief. Thus, the Court finds a violation of FDCPA sections 1692g(a) and (b) does not, by itself, constitute an intangible harm that satisfies the injury-in-fact requirement. *See Spokeo*, 136 S. Ct. at 1549–50; *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a

procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."); *Hancock*, 2016 WL 3996710, at *3 ("[T]he Supreme Court cautioned in *Spokeo* that some statutory violations could 'result in no harm,' even if they involved producing information in a way that violated the law." (quoting *Spokeo*, 136 S. Ct. at 1550)); *In re Nickelodeon Consumer Privacy Litig.*, No. 15-1441, 2016 WL 3513782, at *8 (3d Cir. June 27, 2016) (alterations in original) ("What a plaintiff cannot do, according to the Court [in *Spokeo*], is treat a 'bare procedural violation . . . [that] may result in no harm' as an Article III injury-in-fact."); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2016 WL 4439935, at *5 (N.D. Ill. Aug. 23, 2016) ("The Supreme Court's point in *Spokeo* was not that a statutory violation cannot constitute a concrete injury, but rather that where the bare violation of a statute conferring a procedural right could cause a congressionally identified harm or material risk of harm and just as easily could not, it is not sufficient simply to allege that the statute at issue was violated."). *But see Church*, 2016 WL 3611543, at *3 (finding a debt collector's failure to provide the disclosures mandated by section 1692g of the FDCPA alone constitutes a concrete injury sufficient for standing); *Lane*, 2016 WL 3671467, at *3–5 (same); *Chapman*, 2016 WL 3247872, at *1 n.1 (same).

While the Court finds bare procedural violations of FDCPA sections 1692g(a) and (b) do not amount to a concrete injury, it recognizes that violations of other FDCPA provisions may be sufficient on their own to constitute an Article III injury in fact. *See, e.g.*, *Bernal v. NRA Grp., LLC*, No. 16 C 1904, 2016 WL 4530321, at *4–5 (N.D. Ill. Aug. 30, 2016) (finding alleged violations of section 1692e, which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and section 1692f, which prohibits "unfair or unconscionable means to collect or attempt to collect any debt," constitute a concrete injury

sufficient for Article III standing (quoting 15 U.S.C. §§ 1692e, 1692f)); *Sayles v. Advanced Recovery Sys., Inc.*, No. 3:14-cv-911, 2016 WL 4522822, at \*2–3 (S.D. Miss. Aug. 26, 2016) (finding an alleged violation of section 1692e(8), "which prohibits 'communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed,'" represents a concrete injury (quoting 15 U.S.C. § 1692e(8))); *Quinn v. Specialized Loan Servicing*, No. 16 C 2021, 2016 WL 4264967, at \*3–5 (N.D. Ill. Aug. 11, 2016) (alterations in original) (finding an alleged violation of section 1692e(10), "which prohibits '[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer,'" and section 1692e(11), "which requires debt collectors 'to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose,'" is a concrete injury (quoting 15 U.S.C. §§ 1692e(10)–(11))). The Court's holding is confined to the context of this case and the disclosure requirements in section 1692g of the FDCPA; it does not express judgment on whether a violation of any other FDCPA provision constitutes an injury in fact sufficient for Article III standing.

## V.   CONCLUSION

Violations of the FDCPA disclosure requirements in section 1692g may result in concrete injuries. However, Jackson alleges no such injury. Instead, his only alleged injury is that A&R did not make the correct disclosures mandated by section 1692g. Such a bare procedural violation alone does not constitute an intangible harm that satisfies the injury-in-fact requirement. Without further alleging a concrete and particularized injury as a result of the FDCPA violations, Jackson's claims are insufficient for Article III standing. Consequently, his class-action complaint is

dismissed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (quoting *Warth*, 422 U.S. at 502)).

For the foregoing reasons, Defendant Abendroth & Russell's Motion to Dismiss for Lack of Jurisdiction, ECF No. 9, is **GRANTED**. This case is dismissed. The Clerk of Court is directed to enter judgment in favor of Defendant Abendroth & Russell against Plaintiff Patrick Jackson.

**IT IS SO ORDERED.**

Dated this 12th day of September, 2016.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE